IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

DOROTHY MAE JOHNSON, surviving spouse;   )
and LOIS TOWNES, as Next of Kin to       )
J. DEAN JOHNSON, deceased,               )
    Plaintiff,                           )
                                         )
v.                                       )    No. 2:12-cv-02664-STA-tmp
                                         )
MEMPHIS LIGHT,                           )
GAS & WATER DIVISION                     )
    Defendant.                           )

_____

# ORDER GRANTING MLGW'S MOTION TO EXCLUDE TESTIMONY OF MIGUEL LABOY, M.D.

Plaintiffs filed this lawsuit against Defendant Memphis Light Gas & Water Division ("MLGW'), alleging that MLGW wrongfully and negligently failed to provide utility service to their decedent J. Dean Johnson and that such refusal led to Johnson's death as the result of hyperthermia or heat stroke. (Cmplt. ECF No.1-2.) Defendant MLGW has filed a motion to exclude the testimony of Plaintiffs' expert, Miguel Laboy, M.D., as to Johnson's cause of death. (ECF No. 111.) Plaintiffs have not responded to the motion. For the reasons set forth below, Defendant's motion is **GRANTED**.

    Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case.[1]

---

[1] Fed. R. Evid. 702.

In determining whether expert testimony is admissible, the Court acts as a gatekeeper and is charged with ensuring that all expert testimony that is admitted is relevant and reliable.[2] The Court's "fundamental objective is to generally evaluate, based on whatever factors are important to the particular case, the relevancy and reliability of the testimony…."[3]

Dr. Laboy is the medical examiner who performed Johnson's autopsy. Plaintiffs' expert witness disclosures disclose Dr. Laboy as an expert witness and state that Dr. Laboy "will testify along the lines of his report that J. Dean Johnson's cause of death resulted from probable heat stroke due to the fact that he was inside his secured apartment, which did not have any utilities and the temperature in the bedroom was 93.2 degrees, with 63% of humidity, and that the manner of his death is accident. He will also testify that Plaintiff J. Dean Johnson had no significant medical history."[4]

Defendant contends that Dr. Laboy's conclusion that Johnson's cause of death "resulted from probable heat stroke" should be excluded on the grounds that it is not expressed to the requisite degree of medical certainty, it will not assist the jury in understanding the evidence or in determining a fact in issue, and the opinion is unreliable because Dr. Laboy's methodology is flawed and Dr. Laboy did not reliably rule in or rule out other potential causes of Johnson's death. The Court finds that Defendant's contentions are meritorious.

As noted by Defendant, Dr. Laboy's opinion that Johnson died of "probable heat stroke" does not meet the standard for admissibility of medical causation testimony. When, as here, the plaintiff alleges that the defendant's conduct caused the decedent's death,

---

[2] *Daubert v. Merrell Dow Pharm., Inc.*, 590 U.S. 579, 589 (1993).

[3] *Smith v. Prudential Ins. Co.*, 2012 WL 1965405 at *2 (M.D. Tenn. May 31, 2012) (citing *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999)).

[4] (Pls' Exp Disc., ECF No. 111-1.)

> [t]he plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough…a doctor's testimony that a certain thing is possible is no evidence at all. His opinion as to what is possible is no more valid than the jury's own speculation as to what is or is not possible. Almost anything is possible, and it is thus improper to allow a jury to consider and base a verdict upon a "possible" cause of death.[5]

Dr. Laboy's opinion regarding the cause of Johnson's death fails to meet this standard.

During his deposition, Dr. Laboy referred repeatedly to the cause of Johnson's death as "probable heat stroke," rather than heat stroke. Dr. Laboy's testimony establishes that his opinion regarding "probable heat stroke" does not mean that heat stroke was more likely than not the cause of death. Instead, Dr. Laboy used "probable" because he could not find another explainable cause of death.[6] Dr. Laboy's opinion is speculative and will not assist the jury to determine any fact in issue. It is nothing more than Dr. Laboy's observation that Johnson's death may have been due to heat stroke and is no more helpful that the jury's own speculation as to Johnson's cause of death.[7]

Dr. Laboy's opinion must also be excluded as unreliable because his methodology is flawed. Despite acknowledging that people die in a hot environment from causes other than heat,[8] Dr. Laboy's description of his methodology makes clear that, before the autopsy even

---

[5] *Brooks v. United States*, 2011 WL 3882288 at *6 (E.D. Tenn. Sept. 2, 2011) (quoting *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 861-62 (Tenn. 1985)).

[6] (Dep. Dr. Laboy, pp. 59 - 60, ECF No. 111-5) (Q: "What does 'probable' mean?" A: "Probable means that after reviewing everything there's no other thing that I can attribute the cause of death. And with all the circumstances and evidence at the time, level of histology, I did not find an explainable cause of death for this case.").

[7] *See Wilson v. General Motors Acceptance Corporation*, 2008 WL 2593792 *3 (E.D. Tenn. April 3, 2008) ("A doctor's testimony that a certain thing is possible is no evidence at all. His opinion as to what is possible is no more valid that the jury's own speculation as to what is or is not possible.").

[8] (Dep. Dr. Laboy, p. 44, ECF No. 111-5.)

began, he assumed that heat stroke was the cause of Johnson's death based solely on the environmental conditions in which his body was found. Dr. Laboy failed to reliably rule out or even meaningfully consider any other cause of death.

Dr. Laboy testified that he relied on an investigator's report, which described the temperature of Johnson's apartment and contained a statement that there were no utilities in the apartment,[9] and he reviewed the information regarding the weather history before he concluded that Johnson died as a result of probable heat stroke.[10] Dr. Laboy acknowledged that, during periods of hot weather, he presumes that deaths such as Johnson's are heat related.[11] Dr. Laboy's testimony shows only that Johnson was found in a hot environment and that hot environments may cause heat stroke. "Essentially, this is a bit like saying that if a person has a scratchy throat, runny nose, and a nasty cough, that person has a cold; if, on the other hand, that person has a scratchy throat, runny nose, nasty cough and wears a watch, they have a watch-induced cold."[12]

Dr. Laboy's failure to meaningfully consider alternative causes of death is further demonstrated by his statement that Johnson had "no significant past medical history."[13] Dr. Laboy testified that he reviewed medical records from Johnson's primary care physician, Dr. Barbara Geater.[14] However, Dr. Laboy's office did not receive Dr. Geater's medical records

---

[9] (*Id.* pp. 32 – 33.)

[10] (*Id.* p. 51.)

[11] (*Id.* p. 80.)

[12] *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 673 (6th Cir. 2010).

[13] (Pls' Exp Disc.p. 2, ECF No. 111-1.)

[14] (Dep. Dr. Laboy, p.22, ECF No. 111-5.)

until after he had completed the preliminary autopsy report and reached his conclusion.[15] Dr. Laboy's office received only a single page of progress notes from Dr. Geater.[16]

The complete medical records contain additional pages of information, including the results of lab testing performed on Johnson in May of 2011, with several values that are noted as being outside the reference range.[17] These records also contain a letter to Johnson dated approximately three months before his death stating that Dr. Geater's office had been unable to reach Johnson despite several attempts. The letter states that "we need you to call the office to discuss your lab results" and that "[i]t is very important that you do so as soon as possible."[18] Dr. Laboy did not review this information in making his determination as to Johnson's cause of death.

Expert opinion testimony on the subject of causation may be in the form of a differential diagnosis if three questions can be answered in the affirmative: (1) Did the expert make an accurate diagnosis of the nature of the disease? (2) Did the expert reliably rule in the possible causes of it? (3) Did the expert reliably rule out the rejected causes?[19] "If the court answers 'no' to any of these questions, the court must exclude the ultimate conclusion reached."[20] With respect to the third prong, if the physician "engages in very few standard diagnostic techniques by which doctors normally rule out alternative causes, the doctor must offer a good explanation

---

[15] (*Id.* pp. 86 - 87.)

[16] (*Id.* pp. 101 -102.)

[17] (ECF No. 111-7.)

[18] (*Id.* p. 2.)

[19] *Tamraz*, 620 F.3d at 674 (citing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 179 (6th Cir. 2009).

[20] *Id.*

as to why his or her conclusion remains reliable. Similarly, the doctor must provide a reasonable explanation as to why he has concluded that any alternative cause suggested by the defense was not the sole cause."[21]

Dr. Laboy's methods do not comport with these standards. Dr. Laboy never explains why heat stroke caused Johnson's death other than to state that Johnson was found in a hot environment and that hot environments may cause heat stroke. Dr. Laboy concluded without an adequate basis that Johnson had no "significant medical history," and he failed to analyze or rule out any alternate causes. Such speculative opinion is based on unreliable methodology and must be excluded. Accordingly, the motion to exclude Dr. Laboy's opinion regarding Johnson's cause of death from the trial of this matter is **GRANTED**.

IT IS SO ORDERED.

s/ S. Thomas Anderson
S. THOMAS ANDERSON
U.S. DISTRICT COURT JUDGE

DATE: March 8, 2016

---

[21] *Best*, 563 F. 3d at 179.